IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JULIA A. DUNNAM,                    :
                                    :
      Plaintiff,                    :
                                    :
vs.                                 :      CIVIL ACTION 11-0445-M
                                    :
MICHAEL J. ASTRUE,                  :
Commissioner of Social Security,:
                                    :
      Defendant.                    :


MEMORANDUM OPINION AND ORDER


      In this action under 42 U.S.C. § 405(g), Plaintiff seeks
judicial review of an adverse social security ruling which
denied a claim for disability insurance benefits (Docs. 1, 11).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with
28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19).  Oral
argument was waived in this action (Doc. 18).  Upon
consideration of the administrative record and the memoranda of
the parties, it is **ORDERED** that the decision of the Commissioner
be **AFFIRMED** and that this action be **DISMISSED**.

      This Court is not free to reweigh the evidence or
substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-eight years old, had completed a college education as well as some post-graduate work (Tr. 39), and had previous work experience as a technical support specialist (Tr. 54). In claiming benefits, Plaintiff alleges disability due to bipolar disorder, PTSD, substance abuse disorder (in partial remission), osteoarthritis of the knees, bilaterally, and migraine headaches (Doc. 11 Fact Sheet).

The Plaintiff protectively filed an application for disability benefits on July 9, 2007 (Tr. 105-08; *see also* Tr. 20).[1] Benefits were denied following a hearing by an

---

[1] The record also shows that Dunnam applied for Supplemental Security Income on July 24, 2007 (Tr. 102-04), although the ALJ did not acknowledge it (*see* Tr. 20; *see also* Doc. 11, p. 1 n.1).

Administrative Law Judge (ALJ) who determined that although she was not capable of performing her past relevant work, there were specified jobs existing in the national economy which Dunnam could perform (Tr. 20-34).  Plaintiff requested review of the hearing decision (Tr. 11-12) by the Appeals Council, but it was denied (Tr. 3-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Dunnam alleges that:  (1) The ALJ improperly rejected the opinions of her treating psychiatrist; and (2) the ALJ did not properly develop the record (Doc. 11).  Defendant has responded to—and denies— these claims (Doc. 14).  The relevant medical evidence follows.

A consultative examination was performed by Psychologist Thomas S. Bennett on September 25, 2007 who found Dunnam to be alert and oriented in all spheres; she seemed dysphoric, though quite dramatic, and somewhat labile (Tr. 177-81).  She had no problems with concentration or attention; she had good immediate recall and no significant difficulty with short- or long-term memory.  There were no signs or reports of loose associations, tangential or circumstantial thinking, or confusion; her social judgment was below average, but not impaired.  Though Plaintiff admitted to a good deal of emotional distress, she took very

3

little responsibility for doing things to improve her mood; she was estimated to function in the average to high average range intellectually.  Bennett's diagnostic impression was as follows: major depressive disorder; personality disorder with avoidant and dependent features; and obesity and reports of migraine headaches.  The Psychologist's prognosis was that "Dunnam could probably make significant improvement in virtually every area of life if she were motivated to take more responsibility for her own well being" (Tr. 180).

Psychiatrist Deborah J. Hart began treating Plaintiff on April 19, 2007, noting that she was tearful, emotional, and labile; she prescribed Lortab,[2] Valium,[3] Cymbalta,[4] and Seroquel.[5] (Tr. 216-17; *see generally* Tr. 200-19).  On June 20, the Psychiatrist noted that Plaintiff had no ongoing psychotic processes or disorganized processes though there was cognitive impairment, especially with executive functioning; diagnoses were listed as recurring migraine headaches, major depressive

---

[2]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[3]**Error! Main Document Only.***Diazepam*, better known as Valium, is a class IV narcotic used for treatment of anxiety.  *Physician's Desk Reference* 2765-66 (62nd ed. 2008).

[4]Cymbalta is used in the treatment of major depressive disorder. **Error! Main Document Only.***Physician's Desk Reference* 1791-93 (62nd ed. 2008).

disorder, and ADHD (primarily inattentive type) (Tr. 214).  On
July 12, Hart told Dunnam to limit herself to four valium per
24-hour period and to decrease her lortab use as it was making
her headaches worse (Tr. 210).  On August 28, Dr. Hart wrote a
"to whom it may concern" letter, stating that Plaintiff was
"being treated for Major Depression, chronic recurrent – severe
and Attention Deficit Disorder;" she went on to state that
Dunnam's "last known period of decompensation was in early 2007
during the time frame of loosing [sic] her previous physician"
(Tr. 206).  Finally, the Psychiatrist stated that "[a]t this
point in time, Ms. Dunnam's medical and psychiatric condition is
tenuously unstable and is considered significantly impaired.
This prevents her from pursuing and maintaining gainful
employment" (*id.*).  On September 7, Hart noted more physical
than mental problems; she noted that Dunnam had been misusing
her Lortab, which exacerbated her headaches, but the doctor,
nevertheless, prescribed more Lortab (Tr. 203-04).  On October
24, the Psychiatrist completed a mental residual functional
capacity (hereinafter *RFC*) questionnaire which indicated that
Plaintiff had marked restrictions of daily living, marked
deficiencies of concentration, persistence, or pace resulting in

---

[5]*Seroquel* is used in the treatment of schizophrenia.  **Error! Main**

a failure to complete tasks in a timely manner, and marked episodes of deterioration or decomposition in work or work-like settings which cause her to withdraw from her situation or experience exacerbation of symptoms; the doctor found her moderately limited in all other activities, indicating that her condition was expected to last for more than one year and that her condition was tenuously stable (Tr. 201-02).  On November 26, 2007, Hart noted that Dunnam had quit taking Lortab under her own initiative; she further stated that she had undergone a terrible course of surgery with post-surgical complications which had been delayed because of her doctor's concern over her misuse of drugs (Tr. 224).  Also in November 2007, the Psychiatrist completed another mental RFC questionnaire which stated that Plaintiff had extreme—as opposed to marked—episodes of deterioration or decomposition in work or work-like settings; Hart also indicated that Dunnam was between moderately and markedly limited—as opposed to the finding of being moderately limited one month prior—in the following tasks:  her ability to understand, carry out, and remember instructions; respond appropriately to supervision and co-workers in a work setting; and perform repetitive tasks in a work setting (Tr. 222).  Hart

---

**Document Only.** *Physician's Desk Reference* 670-72 (62nd ed. 2008).

indicated that Plaintiff's prognosis was poor and tenuous (Tr. 223).  On January 2, 2008, Dunnam left a message at Hart's office, saying that she was depressed and wanted to know if she could have her vagina cut out and have it sewn shut and asked about a sex change; she later called back and said to disregard the last message (Tr. 243).  On February 11, 2008, the doctor stated that Plaintiff was stable (Tr. 239).

On July 21, 2008, Dunnam was seen at the Baldwin County Mental Health Center and described her problems as including, among other things, inconsistent sleep patterns, depression, irritability, suicidal thoughts, and regular alcohol and cannabis abuse (Tr. 265; *see generally* Tr. 260-71).  Her initial diagnosis was Bipolar II Disorder, chronic PTSD, ETOH and Cannabis abuse (Tr. 263).  A note on July 29 states that Plaintiff had been referred because she no longer had insurance coverage providing for a private psychiatrist; she was alert and oriented in three spheres (Tr. 269-70).  On September 9, Plaintiff's depression was said to be caused by situational factors (Tr. 268).  On October 9, Jason Jones, CRNP, stated that Plaintiff was alert, oriented in three spheres, and that her depression was improved, and that she had not had any alcohol or street drugs (Tr. 267).  On November 11, Jones completed a

7

mental RFC in which he indicated that Dunnam was moderately
limited in her daily activities, maintaining social functioning,
and in all tasks; he also indicated that she had had three
episodes of deterioration or decompensation at work (Tr. 261-
62).  The CRNP indicated that the limitations had lasted for
more than a year and Dunnam's prognosis was fair.  On May 14,
2009, Jones noted that Plaintiff rated her symptoms as five on a
scale of ten; she was being prescribed Trazodone[6] for her
depression (Tr. 297-98).  Dunnam indicated that the medications
were helping as she was sleeping better and less depressed; she
was oriented in five spheres.  She had good judgment and insight
into her problems.  Five days later, Plaintiff was seen again
for anxiety related to family stresses which were characterized
as situational; insight and judgment were fair (Tr. 299-300).
On August 6, Dunnam was very distressed because she had been
turned down for social security benefits; the CRNP noted that
she looked disheveled and her normally neat appearance had
deteriorated (Tr. 301-02).  Plaintiff was oriented in five
spheres; her affect was blunted but her thoughts were logical
and goal directed.  She had had several drinks periodically;
Dunnam described her symptoms as five on a scale of ten.  On

---

[6]**Error! Main Document Only.**_Trazodone_ is used for the treatment of

August 20, Dunnam was still depressed about the disability
denial; she was switched to Paxil[7] for her depression (Tr. 303-
04).  Plaintiff was neatly dressed and her hygiene was good;
thoughts were logical and goal directed.  Insight and judgment
were poor.  On November 12, 2009, Jones noted that Plaintiff was
alert and oriented in four spheres, though her affect was
blunted (Tr. 305-06).  Dunnam denied suicidal ideation or using
alcohol or street drugs; insight and judgment were fair.  On
January 14, 2010, Plaintiff stated that her medications were
helpful and she was sleeping well; CRNP Jones noted that she was
oriented in four spheres though she was having problems with
concentrating and short-term memory (Tr. 328-29).  On April 8,
Dunnam was oriented in four spheres and said that she was
feeling better; affect was normal with good insight and fair
judgment (Tr. 330-31).  On July 1, Jones noted that Plaintiff
was depressed; the prescription for Paxil was switched to
Lexapro[8] and the Seroquel was switched to Wellbutrin[9] (Tr. 332-
33).  Short-term memory was impaired though long-term memory was

---

depression.  *Physician's Desk Reference* 518 (52nd ed. 1998).
    [7]**Error! Main Document Only.***Paxil* is used to treat depression.
*Physician's Desk Reference* 2851-56 (52nd ed. 1998).
    [8]*Lexapro* is indicated for the treatment of major depressive
disorder.  **Error! Main Document Only.***Physician's Desk Reference* 1175-
76 (62nd ed. 2008).
    [9]**Error! Main Document Only.***Wellbutrin* is used for treatment of

good; insight and judgment were fair.  On July 22, Dunnam was alert and oriented in four spheres; she described herself as anxious (Tr. 334-35).  Thought process was logical and goal directed.  On September 23, 2010, Plaintiff described herself as depressed because of all the stress in her life; insight and judgment were good (Tr. 372-73).  This concludes the relevant medical evidence.

Dunnam first claims that the ALJ did not accord proper legal weight to the opinions, diagnoses and medical evidence of her treating psychiatrist, Deborah J. Hart.  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[10] *see also* 20 C.F.R. § 404.1527 (2011).

In her decision, the ALJ discounted Dr. Hart's conclusions.  Though lengthy, the full text of that discussion is set out herein:

---

depression.  *Physician's Desk Reference* 1120-21 (52nd ed. 1998).

[10]The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

I have considered Dr. Hart's findings
and opinions regarding the claimant's mental
functional capacities and limitations as set
out in the mental residual functional
capacity questionnaires at Exhibits 6F and
9F and find that the doctor's opinions are
inconsistent with the record as a whole and
are not fully substantiated by the
evidentiary record.  I recognize that 20
C.F.R. 404.1527(d)(2) and Social Security
Ruling 96-2p require that a treating
source's medical opinion on the nature and
severity of a claimant's impairments must be
given controlling weight if it is well-
supported by medically acceptable clinical
and laboratory techniques and is not
inconsistent with other substantial evidence
in the record.  It is also well recognized
that a treating physician's report that is
merely conclusionary [sic] or that is not
supported by objective medical evidence may
be discounted.  *Edwards v. Sullivan*, 937
F.2d 580, 583 (11th Cir. 1991); *Schnorr v.
Bowen*, 816 F.2d 578, 582 (11th Cir. 1987);
*Holley v. Chater*, 931 F.Supp. 840, 848 (S.D.
Fla. 1996).  A treating physician's opinion
may also be discounted if it is inconsistent
with her own office notes and medical
records.  *Jones v. Dept*., 941 F.2d 1529,
1533 (11th Cir. 1992), or if it is based on
the self-report of a claimant with poor
credibility.  *Long v. Shalala*, 902 F.Supp.
1544, 1547 (M.D. Fla. 1995).  In *Washington
v. Barnhart*, 175 F.Supp. 2d 1340 (M.D. AL
2001), the treating physician's PCE form and
pain form were both rejected because the
doctor's office notes "were simply not
consistent with his conclusions." (*See also
Preyear v. Chater*, 1996 U.S. Dist. LEXIS
15539 (S.D. AL 1996)).
    In the present case, a review of the
documentary medical evidence of record
reflects that Dr. Hart's opinions in the
residual functional capacity questionnaires

are not supported or corroborated by the
information contained in her treatment
records, in the treatment records of Baldwin
County Mental Health Center, or in the
findings and conclusions recorded by Dr.
Bennett in his September 25, 2007
psychological evaluation report.  Dr. Hart's
opinions are based on a relatively brief
period of time during which she treated the
claimant and are inconsistent with the
claimant's longitudinal treatment history
and the findings and conclusions set out in
the reports of the consultative examining
physicians.  Dr. Hart's treatment records
reflect that the claimant discussed her
frustrations with her living situation, her
interpersonal relationships, and her medical
treatment relative to her gynecological
problems, but those treatment records
contain no significant reports by the
claimant of crisis events or specific
instances of deterioration or
decompensation.  Dr. Hart's opinions in the
residual functional capacity questionnaires
are also internally inconsistent in that she
stated that the claimant had marked and
extreme limitations in the relevant areas of
mental functioning, but she then indicated
that the claimant had only a "moderate"
degree of limitation in her abilities to
understand, remember, and carryout
instructions, to respond appropriately to
supervision and coworkers, and to perform
simple and repetitive tasks on a sustained
basis in a routine work setting.  Other
inconsistencies that undermine the validity
of Dr. Hart's opinions include the fact that
Dr. Hart changed her opinion regarding the
claimant's episodes of deterioration or
decompensation from "marked" in the October
24, 2007 residual functional capacity
questionnaire to "extreme" in the November
26, 2007 questionnaire but her treatment
notes contain no apparent reason or basis

12

for the purported worsening of the
claimant's level of mental functioning.
Additionally, three months later in
February, 2008, Dr. Hart reported that the
claimant's mood was stable with medications.
I also find it noteworthy that, in November,
2008, the claimant's treating psychiatric
nurse practitioner, Jason Jones, CRNP,
opined that the claimant had no more than a
"moderate" degree of impairment in the
relevant areas of mental functioning.  This
indicates that, even if it is assumed that
Dr. Hart's opinions regarding the claimant's
degree of mental functional impairment in
October and November, 2007 were credible,
the claimant's level of mental functioning
must have improved over the course of the
following year, rendering Dr. Hart's
opinions moot.  This conclusion is supported
by the fact that, in her February 11, 2008
treatment note, Dr. Hart stated that the
claimant's mood was stable with medications.
For all of the foregoing reasons, I am
unable to assign any significant evidentiary
weight to Dr. Hart's opinions regarding the
claimant's mental functional capacities and
limitations.

I have also considered Dr. Hart's
opinion in the August 28, 2007 letter that
the claimant's psychiatric condition
prevented the claimant form [sic] "pursuing
and maintaining gainful employment."  Social
Security Rulings 96-2p and 96-5p indicate
that a physicians' opinion on issues
reserved to the Commissioner of Social
Security is never entitled to controlling
weight or special significance.  Examples of
opinions that may not be given controlling
weight are opinions about what an
individual's residual functional capacity is
and whether an individual is disabled.
Since Dr. Hart's opinion that the claimant
cannot maintain gainful employment concerns
an issue (whether the claimant is disabled)

13

> reserved to the Commissioner, it cannot be
> given controlling weight.

(Tr. 29-31).

The Court has reviewed the evidence of record and finds
that the ALJ's rejection of Dr. Hart's conclusions is supported
by substantial evidence.  The ALJ correctly noted that the
Psychiatrist's medical records do not support the limitations
she listed in the RFC questionnaires.  Even if those limitations
were accurate on the very days that the questionnaires were
completed, Hart indicated on the last day she saw her that
Dunnam was stable.  This last note is more consistent with the
medical records and the mental RFC questionnaire completed by
CRNP Jones.  Collectively, this demonstrates that although
Plaintiff suffered through bad periods with her impairments,
she, nevertheless, has not demonstrate a twelve-month
disability.  *See* 20 C.F.R. § 404.1505(a) (2011) ("The law
defines disability as the inability to do any substantial
gainful activity by reason of any medically determinable
physical or mental impairment which can be expected to result in
death or which has lasted or can be expected to last for a
continuous period of not less than 12 months").  The Court finds
that the ALJ gave well-reasoned conclusions for rejecting Dr.

Hart's opinions; the Court finds that the ALJ's conclusions are supported by substantial evidence.

Plaintiff has also claimed that the ALJ did not properly develop the record.  The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the Administrative Law Judge even if the claimant is represented by counsel.  *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

The Court finds no merit in this claim.  The ALJ's rejection of the evidence submitted by Dr. Hart, leaving only evidence which did not support a disability finding, does not necessarily lead to the conclusion that more evidence should be gathered.  The Court finds that there was sufficient medical evidence from which the ALJ could draw her conclusions.

Dunnam has raised two claims in bringing this action.  Both are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.

DONE this 20th day of April, 2012.

15

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE